**UNITED STATES of America,
Plaintiff, Appellee,**

**v.**

**Steven McGILL, Defendant, Appellant.**

**No. 91–1588.**

United States Court of Appeals,
First Circuit.

Heard Nov. 7, 1991.

Decided Dec. 19, 1991.

David N. Cicilline, Providence, R.I., for defendant, appellant.

Marie K. McElderry, Atty., U.S. Dept. of Justice, with whom John R. Dunne, Asst. Atty. Gen., David K. Flynn, Atty., U.S. Dept. of Justice, Washington, D.C., Lincoln C. Almond, U.S. Atty., and Anthony DiGi-

oia, Asst. U.S. Atty., Providence, R.I., were on brief for plaintiff, appellee.

Before BREYER, Chief Judge, SELYA and CYR, Circuit Judges.

SELYA, Circuit Judge.

Defendant-appellant Steven McGill was indicted by a federal grand jury on a charged violation of 18 U.S.C. § 242 (1982).[1] The government alleged in substance that McGill was a correctional officer at a state prison in Rhode Island; that on July 10, 1984, while on duty, he subjected an inmate, Roger Alessio, to a simulated version of "Russian Roulette"; that, in the course of this perilous fandangle, McGill aimed a firearm at Alessio's head and pulled the trigger; and that the gun discharged, sending a bullet into Alessio's skull, killing him and thus violating his civil rights. Following trial in the United States District Court for the District of Rhode Island, a jury found McGill guilty as charged. The district court sentenced him to a twelve-year prison term. McGill appeals. We affirm.[2]

We need not linger long over this appeal. We discuss the assigned errors in decurtate fashion, indicating the general basis for our rulings. In our view, no more is merited.

### A.

The first two assignments of error relate to the district court's jury instructions. In fine, McGill alleges that the court erred both in defining "willfulness" and in describing section 242's "under color of . . . law" requirement. The short, conclusive response to these importunings is that no contemporaneous objection was lodged in either respect when the district court delivered its jury instructions. Hence, the objections were waived.[3]

To be sure, an appellate court can vacate a defendant's conviction on the basis of instructional error, even in the absence of a contemporaneous objection, if the error is "plain." *See United States v. Natanel*, 938 F.2d 302, 311 (1st Cir.1991); *United States v. Mejia–Lozano*, 829 F.2d 268, 272 (1st Cir.1987); *United States v. Griffin*, 818 F.2d 97, 100 (1st Cir.), *cert. denied*, 484 U.S. 844, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987). But, although the possibility is often discussed, the actuality is seldom seen. When all is said and done, "[t]he plain error hurdle is high." *United States v. Hunnewell*, 891 F.2d 955, 956 (1st Cir.1989).

In this instance, the hurdle is insurmountable. While the appellant's points appear to possess a patina of plausibility when bits and pieces of the district court's charge are wrested out of context, the patina dissolves completely when the charge, as needs must, is "taken in its entirety." *Griffin*, 818 F.2d at 100. The judge's in-

---

**1.** The statute of conviction provides in material part:

Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States ... shall be fined not more than $1,000 or imprisoned not more than one year, or both; and if death results shall be subject to imprisonment for any term of years or for life.

18 U.S.C. § 242 (1982).

**2.** This case has endured a checkered history. Before the federal authorities indicted McGill, the State of Rhode Island sought to prosecute him on state charges and botched the attempt. Thereafter, McGill was tried and convicted federally. He did not file a timeous appeal. There followed a series of applications for postconviction relief designed to reinstate his foregone right to appeal the conviction. That history, while fascinating, became irrelevant when, on June 5, 1991, the district court vacated the original sentence and resentenced McGill to the same term, with credit for time served. The government concedes that the instant appeal, taken promptly upon resentencing, is properly before us.

**3.** The applicable rule provides in pertinent part:

The court may instruct the jury before or after [final] arguments are completed or at both times. No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection.

Fed.R.Crim.P. 30. Appellant, represented here by new counsel, acknowledges his failure to comply with the strictures of Rule 30.

structions, as a whole, spelled out the elements of the offense and the government's burden of proof. They also adequately communicated the theory of McGill's defense and the workings of the presumption of innocence. In the last analysis, we are hard pressed to discern instructional error to any degree—and we are completely unable to discern anything approaching a mistake so grave that it could have "seriously affect[ed] the fundamental fairness and basic integrity of the proceedings conducted below." *Id.* There was no plain error in the district court's charge.

### B.

There was testimony before the jury that McGill, after narrating several self-serving accounts, finally admitted, within hours of the homicide, that he was imitating the depiction of a game of Russian Roulette played by Vietnamese guards at a prisoner-of-war camp in a feature film entitled "The Deerhunter." There was also testimony that, immediately prior to pulling the trigger, McGill shouted the words "mau, mau"—a cry imitative of conduct occurring in the film. The prosecution sought to show the Russian Roulette scene at McGill's trial. Defense counsel endeavored to avoid an excerpted rendition. In what seems to have been a compromise, both sides agreed to let the jury see the entire film, rather than just the single scene. Recognizing that his acquiescence in the admission of the evidence at trial constitutes a waiver, *see* Fed.R.Evid. 103(a)(1) (requiring timely objection to admission of evidence), McGill attempts to resurrect the point on appeal by a claim that allowing the jury to view the motion picture constituted plain error. *See* Fed. R.Evid. 103(d) (with respect to admission of evidence, appellate court may notice "plain errors affecting substantial rights" even if such errors were not brought to the trial court's attention); Fed.R.Crim.P. 52(b) (similar).

This claim sounds a particularly dissonant chord. Counsel jointly presented the trial judge with a stipulation that a certain piece of evidence—a three-hour-long movie, the exact content of which was beyond the judge's ken—should be received into evidence. Given the stipulation and the attendant circumstances, any error in admitting the film could not possibly have been apparent to the trial judge when the proffer was made. It is, therefore, not surprising that, in cases like this one, where a party has stipulated to the admission of particular evidence, courts have been especially slow to find plain error when the party belatedly decides that the stipulation was improvident. *See, e.g., United States v. Vogt,* 910 F.2d 1184, 1192 (4th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 955, 112 L.Ed.2d 1043 (1991); *United States v. Sisto,* 534 F.2d 616, 624 n. 9 (5th Cir.1976) (warning against dangers of "sandbagging").

We do not go so far today as to hold that where evidence is received pursuant to stipulation, plain error can never be found. In the end, our focus must be on whether the "fundamental fairness of the trial" has been undermined, *see United States v. Young,* 470 U.S. 1, 16, 105 S.Ct. 1038, 1046–47, 84 L.Ed.2d 1 (1985); or, put another way, whether, apart from deploying plain error, "a miscarriage of justice would otherwise result." *United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982). We are convinced that, in the case at hand, these rubrics cannot conceivably apply. We explain briefly.

The movie was clearly relevant. *See* Fed.R.Evid. 401 (evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). So long as evidence is relevant, it is hen's-teeth rare that we, from the vista of a cold appellate record, can justifiably say, particularly in the absence of a contemporaneous objection, that the evidence's probative value was so outweighed by the specter of unfair prejudice that its introduction constituted reversible

error.[4] Indeed, the cases are legion in which we, and other courts, have refused to overturn verdicts notwithstanding the trial judge's allowance of evidence which, though relevant, was grisly, sensational, or otherwise daunting. *See, e.g., Foley v. Lowell*, 948 F.2d 10, 15 (1st Cir.1991) (approving lower court's admission of evidence anent particularly vile incident of police brutality); *Real v. Hogan*, 828 F.2d 58, 61 (1st Cir.1987) (evidence of plaintiff's bloodstained hands); *United States v. Cintolo*, 818 F.2d 980, 997–98 (1st Cir.) (evidence of order to commit murder), *cert. denied*, 484 U.S. 913, 108 S.Ct. 259, 98 L.Ed.2d 216 (1987); *United States v. Moreno Morales*, 815 F.2d 725, 739–40 (1st Cir.) (evidence of murder), *cert. denied*, 484 U.S. 966, 108 S.Ct. 458, 98 L.Ed.2d 397 (1987); *Kealoha-pauole v. Shimoda*, 800 F.2d 1463, 1466 (9th Cir.1986) (habeas court upholds admission of autopsy film into evidence), *cert. denied*, 479 U.S. 1068, 107 S.Ct. 958, 93 L.Ed.2d 1006 (1987). We think it crystal clear that the district court did not commit plain error in accepting counsels' agreement and permitting the jury to see "The Deerhunter" from start to finish.

### C.

The appellant's final assignment of error piggybacks on the contentions previously discussed. He claims to have been deprived of proficient representation because his trial attorney failed to object to the jury instructions and stipulated to the cinematic display. Whatever the merits of this claim—and we do not suggest it possesses merit—it is not ripe for review.

We do not ordinarily consider complaints of ineffective assistance on di-

rect appeal. *See, e.g., United States v. Costa*, 890 F.2d 480, 482–83 (1st Cir.1989); *United States v. Kobrosky*, 711 F.2d 449, 457 (1st Cir.1983). To the contrary, "[t]he rule in this circuit is that a fact-specific claim of ineffective legal assistance cannot be raised initially on direct review of a criminal conviction, but must originally be presented to the district court." *Hunnewell*, 891 F.2d at 956. While we have made an occasional exception where, for example, "the critical facts are not genuinely in dispute and the record is sufficiently developed to allow reasoned consideration of an ineffective assistance claim," *Natanel*, 938 F.2d at 309 (citing representative cases), McGill's case falls squarely within the general rule, not the exotic exception to it. The relevant facts, especially those concerning the reasons behind trial counsel's adoption of certain strategies, are unclear. Moreover, the trial judge, who is obviously in the best position to evaluate what was done and why, has never passed upon the adequacy of the defendant's representation. In a nutshell, McGill is jumping the gun by attempting to raise the issue on direct appeal.[5]

*Affirmed.*

---

**4.** "Plain error" is, of course, different, and harder for an appellant to come by, than "reversible error." *See United States v. Lopez-Pena*, 912 F.2d 1542, 1547 (1st Cir.1989) (discussing distinction), *vacated on other grounds*, 912 F.2d 1552 (1st Cir.1990) (en banc), *reinstated*, 944 F.2d 51 (1st Cir.1991) (en banc); *see also Griffin*, 818 F.2d at 100 (plain error differs from prejudicial error).

**5.** McGill's appellate counsel conceded at oral argument that the factual record on the claim was incomplete and moved that we remand for further proceedings. We do not think a remand is the proper procedural vehicle and thus deny the motion. But, in refusing either to remand or to address the merits of McGill's ineffective assistance claim, "we neither foreclose, nor take any view of, a subsequent petition in the district court under 28 U.S.C. § 2255 predicated on this ground." *Hunnewell*, 891 F.2d at 956 n. 1.