April 28, 1993

[NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

No. 92-1761

UNITED STATES OF AMERICA,

Appellee,

v.

ALFREDO MALDONADO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Torruella, Circuit Judge,

Coffin, Senior Circuit Judge,

and Boudin, Circuit Judge.

Ralph J. Perrotta for appellant.

Margaret D. McGaughey, Assistant United States Attorney, with

whom Richard S. Cohen, United States Attorney, Jonathan R. Chapman,

Assistant U.S. Attorney, and F. Mark Terison, Assistant U.S. Attorney,

were on brief for appellee.

Per Curiam. Appellant Maldonado contends that his sentence

on a drug distribution charge was tainted by false information

presented at his sentencing hearing. He claims that both the

prosecutor and defense counsel should have brought the problems

to the attention of the sentencing judge, and their failure to do

so constituted, respectively, a denial of due process and

ineffective assistance of counsel. We affirm.

This case arises from a drug conspiracy that extended from

the summer of 1990 through spring 1991, involving Maldonado and

two other individuals, both of whom testified at Maldonado's

sentencing hearing. Their testimony depicted Maldonado as the

organizer or supervisor of the endeavor. They said he was the

source of all the cocaine they sold and, at least for part of the

conspiracy period, he set the prices and controlled the proceeds.

The two men also testified to the amounts of cocaine involved in

the conspiracy, describing both amounts sold to customers and

amounts delivered by or obtained through Maldonado.

The testimony on drug amounts was not precisely consistent,

and at times was confusing. The district court was satisfied,

however, that Maldonado was responsible for at least five

kilograms, the lowest amount necessary to trigger offense level

32 under the Sentencing Guidelines. Based on the two witnesses'

testimony, the court also found that Maldonado served as

organizer or supervisor of the conspiracy. The court sentenced

Maldonado to 121 months, the shortest possible term under the

relevant guideline.

Maldonado identifies three factual flaws in his sentencing:

(1) the government misrepresented the nature of its plea

agreement with the primary witness, co-conspirator Lemieux, by

stating that Lemieux's culpability was limited to the quantity of

drugs known at the time of his indictment; (2) the court was not

apprised that, contrary to his statements at the hearing, Lemieux

had done extensive drug dealing before the conspiracy at issue

here; and (3) the court also did not know that Lemieux's

testimony at the hearing about the number of cocaine customers he

could identify by name differed from earlier statements he had

given to authorities.

Maldonado asserts that the lawyers' failure to alert the

district court to the true circumstances may have caused the

court to overvalue Lemieux's testimony and, therefore, to impose

a higher sentence. Additionally, he criticizes defense counsel's

failure to impeach Lemieux's credibility on the quantity of drugs

dealt during the conspiracy. Maldonado claims that the

prosecutor's omissions denied him due process and that the

defense attorney's deficiencies deprived him of meaningful

representation by counsel. Consequently, he maintains that his

sentence must be vacated.

This appeal is unavailing for a number of reasons. First,

it relies in substantial part on documents that were not

presented to the district court. Maldonado's contention that

information about Lemieux's prior drug dealing was omitted from

the sentencing hearing and that Lemieux testified inconsistently

-3-

about his knowledge of customer names is based on prior

statements Lemieux gave to authorities. None of these unsworn

statements was made a part of the record below. Rather than

asking this court to consider these interviews for the first time

on appeal, Maldonado should have brought them first to the

attention of the trial court, see Eagle-Picher Industries, Inc.

v. Liberty Mutual Insurance Co., 682 F.2d 12, 22 & n.8 (1st Cir.

1982), presumably in the form of a motion under 28 U.S.C.

2255.1

Were we to consider the interviews and rule on the merits of

his claims, Maldonado would fare no better. The documents do not

evince perjury by Lemieux or undermine in any other way the

district court's findings on the amount of drugs involved and

Maldonado's role. The testimony of Lemieux highlighted by

Maldonado reasonably is understood not as a denial of prior drug

dealing but simply as confirmation of the date the conspiracy at

issue began. See Transcript of Sentencing Hearing (Tr.) at 9.2

As for the customer names, a year's lapse in time and a

1 We recognize that Maldonado's appeal rests on the fact
that these documents were not presented to the district court.
To the extent the omission of the documents gives rise to a claim
of ineffective assistance of counsel, however, Maldonado is
obliged under longstanding precedent to present the claim first
to the district court. See infra at 5-7. The due process claim,

relying as it does on the alleged deception of the district
court, strikes us as similarly inappropriate for initial review
by this court.

2 In fact, although the point was not developed, Lemieux was
asked by defense counsel whether he had been dealing drugs before
he became involved in this conspiracy. He answered "yes." See

Tr. at 27.

-4-

difference in the questions asked account for the slight

variations in Lemieux's statements.3

Second, Maldonado's attempt to create controversy at this

juncture over the nature of Lemieux's plea agreement plainly

lacks substance. Although the government's characterization of

the agreement was muddled, the district court focused on the very

point about which Maldonado is concerned -- the discrepancy

between the amounts of cocaine that Lemieux attributed to the

conspiracy in his testimony and the much smaller amount on which

he was sentenced. See Tr. at 85-88. We are confident that the

court understood the prosecutor to say only that Lemieux's

sentence likely was based on the amount of cocaine known to the

government at the time he was sentenced. In any event, the court

had the agreement before it and was in no way deceived.

Third, the claim of ineffective assistance of counsel is not

properly before us as we ordinarily do not consider such

complaints when raised for the first time on direct appeal. See

United States v. Georgacarakos, No. 92-1890, slip op. at 18

(March 30, 1993); United States v. McGill, 952 F.2d 16, 19 (1st

Cir. 1991). This is not the "exotic exception" to the rule, see

McGill, 952 F.2d at 19, where the record is sufficiently

developed to allow reasoned consideration of the claim by the

appeals court in the first instance. Indeed, this claim is

3 This case does not involve allegations of either delayed
disclosure or nondisclosure of Lemieux's statements, and
Maldonado's reliance on United States v. Osorio, 929 F.2d 753,

758 (1st Cir. 1991) and United States v. Perkins, 926 F.2d 1271,

1275 (1st Cir. 1991), is therefore misplaced.

-5-

particularly suited to resolution by the district court because

its gist is that that court was led astray by counsel's

performance.

Once again, even if review were appropriate, we would find

no constitutional error. During cross-examination, trial counsel

appropriately focused on Lemieux's testimony regarding the amount

of cocaine and Maldonado's role in the conspiracy. Maldonado, in

fact, acknowledges that the attorney reasonably "dealt with the

crucial issue of quantity by accepting the veracity of that part

of Lemieux's testimony . . . most favorable to his client . . .

." See Brief at 14 ("These arguments were certainly valid . .

.."). But he goes on to argue that a more direct challenge to

Lemieux's testimony should have been made based on the witness's

prior statements to authorities. Those statements, however,

arguably lend support to the government's calculation of cocaine

amounts.4 The decision not to utilize them therefore would

4 Our computations show that the grand jury testimony and
reports filed by two agents for the Bureau of Intergovernmental
Drug Enforcement supported substantially more than the minimum of
five kilograms of cocaine found by the district court.
Maldonado relies in particular on Lemieux's statement to
Agent Kelly that Maldonado delivered 1/2 to 1 pound of cocaine
every two weeks for about 32 weeks. See App. at 9. Using the

smaller estimate, Maldonado asserts that this produces only about
3.6 kilograms, and that this amount is far less than the lowest
quantity to which Lemieux testified at the hearing. But in so
arguing, Maldonado is reading Kelly's memorandum selectively.
The document also reports Lemieux's statement that he made trips
to Providence and New York to pick up approximately 4 additional
kilograms from Maldonado. See App. at 9-10.

Maldonado also points to Lemieux's statements to Agents
Kelly and Small concerning a hiatus in drug dealing in early
1991, contending that the Small report describes a four-month
period from January through April while the Kelly report notes an
approximately two-month break. We do not read the memoranda as

-6-

indicate sound strategy. See Isabel v. United States, 980 F.2d

60, 65 (1st Cir. 1992) (quoting Barrett v. United States, 965

F.2d 1184, 1193 & n.18 (1st Cir. 1992)) ("[W]e may not find a

deficient professional performance in the constitutional sense

unless the challenged decisions were not `plausible options.'").

The other document upon which Maldonado's claims rest is an

Immigration and Naturalization Service investigative memorandum

detailing Lemieux's prior drug dealing activities. At the time

of sentencing, the district court knew that Lemieux was a

convicted drug dealer testifying as part of a plea agreement with

the government. We fail to see how the peripheral information

that Lemieux also had dealt drugs independently in the past could

have affected materially the district court's fact-finding on the

amount of cocaine and Maldonado's role in the conspiracy.5

Maldonado falls far short of demonstrating that "there is a

reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different."

Strickland v. Washington, 466 U.S. 668, 694 (1984).

Finally, we note that, at bottom, this appeal is a creative

attempt to challenge as a matter of law the district court's

unassailable factual findings that Maldonado was the leader of a

necessarily inconsistent. Small's report describes the time
frame as "between the months of January 1991 to the beginning of
April 1991," see App. at 4 -- which plainly excludes the month of

April and thus could be read to mean only the two months between

January and April.

5 Moreover, as previously noted, Lemieux did admit earlier
dealing.

-7-

conspiracy involving the distribution of at least five kilograms

of cocaine. In our view, Maldonado received fair treatment and

was represented by competent counsel. Accordingly, his sentence

is unchallengeable.

Affirmed.

-8-