USCA1 Opinion

 

 April 28, 1993 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1761 UNITED STATES OF AMERICA, Appellee, v. ALFREDO MALDONADO, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. D. Brock Hornby, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ ____________________ Ralph J. Perrotta for appellant. _________________ Margaret D. McGaughey, Assistant United States Attorney, with ______________________ whom Richard S. Cohen, United States Attorney, Jonathan R. Chapman, _________________ ____________________ Assistant U.S. Attorney, and F. Mark Terison, Assistant U.S. Attorney, _______________ were on brief for appellee. ____________________ ____________________ Per Curiam. Appellant Maldonado contends that his sentence __________ on a drug distribution charge was tainted by false information presented at his sentencing hearing. He claims that both the prosecutor and defense counsel should have brought the problems to the attention of the sentencing judge, and their failure to do so constituted, respectively, a denial of due process and ineffective assistance of counsel. We affirm. This case arises from a drug conspiracy that extended from the summer of 1990 through spring 1991, involving Maldonado and two other individuals, both of whom testified at Maldonado's sentencing hearing. Their testimony depicted Maldonado as the organizer or supervisor of the endeavor. They said he was the source of all the cocaine they sold and, at least for part of the conspiracy period, he set the prices and controlled the proceeds. The two men also testified to the amounts of cocaine involved in the conspiracy, describing both amounts sold to customers and amounts delivered by or obtained through Maldonado. The testimony on drug amounts was not precisely consistent, and at times was confusing. The district court was satisfied, however, that Maldonado was responsible for at least five kilograms, the lowest amount necessary to trigger offense level 32 under the Sentencing Guidelines. Based on the two witnesses' testimony, the court also found that Maldonado served as organizer or supervisor of the conspiracy. The court sentenced Maldonado to 121 months, the shortest possible term under the relevant guideline. Maldonado identifies three factual flaws in his sentencing: (1) the government misrepresented the nature of its plea agreement with the primary witness, co-conspirator Lemieux, by stating that Lemieux's culpability was limited to the quantity of drugs known at the time of his indictment; (2) the court was not apprised that, contrary to his statements at the hearing, Lemieux had done extensive drug dealing before the conspiracy at issue here; and (3) the court also did not know that Lemieux's testimony at the hearing about the number of cocaine customers he could identify by name differed from earlier statements he had given to authorities. Maldonado asserts that the lawyers' failure to alert the district court to the true circumstances may have caused the court to overvalue Lemieux's testimony and, therefore, to impose a higher sentence. Additionally, he criticizes defense counsel's failure to impeach Lemieux's credibility on the quantity of drugs dealt during the conspiracy. Maldonado claims that the prosecutor's omissions denied him due process and that the defense attorney's deficiencies deprived him of meaningful representation by counsel. Consequently, he maintains that his sentence must be vacated. This appeal is unavailing for a number of reasons. First, it relies in substantial part on documents that were not presented to the district court. Maldonado's contention that information about Lemieux's prior drug dealing was omitted from the sentencing hearing and that Lemieux testified inconsistently -3- about his knowledge of customer names is based on prior statements Lemieux gave to authorities. None of these unsworn statements was made a part of the record below. Rather than asking this court to consider these interviews for the first time on appeal, Maldonado should have brought them first to the attention of the trial court, see Eagle-Picher Industries, Inc. ___ _____________________________ v. Liberty Mutual Insurance Co., 682 F.2d 12, 22 & n.8 (1st Cir. ____________________________ 1982), presumably in the form of a motion under 28 U.S.C. 2255.1 Were we to consider the interviews and rule on the merits of his claims, Maldonado would fare no better. The documents do not evince perjury by Lemieux or undermine in any other way the district court's findings on the amount of drugs involved and Maldonado's role. The testimony of Lemieux highlighted by Maldonado reasonably is understood not as a denial of prior drug dealing but simply as confirmation of the date the conspiracy at issue began. See Transcript of Sentencing Hearing (Tr.) at 9.2 ___ As for the customer names, a year's lapse in time and a ____________________ 1 We recognize that Maldonado's appeal rests on the fact that these documents were not presented to the district court. To the extent the omission of the documents gives rise to a claim of ineffective assistance of counsel, however, Maldonado is obliged under longstanding precedent to present the claim first to the district court. See infra at 5-7. The due process claim, ___ _____ relying as it does on the alleged deception of the district court, strikes us as similarly inappropriate for initial review by this court. 2 In fact, although the point was not developed, Lemieux was asked by defense counsel whether he had been dealing drugs before he became involved in this conspiracy. He answered "yes." See ___ Tr. at 27. -4- difference in the questions asked account for the slight variations in Lemieux's statements.3 Second, Maldonado's attempt to create controversy at this juncture over the nature of Lemieux's plea agreement plainly lacks substance. Although the government's characterization of the agreement was muddled, the district court focused on the very point about which Maldonado is concerned -- the discrepancy between the amounts of cocaine that Lemieux attributed to the conspiracy in his testimony and the much smaller amount on which he was sentenced. See Tr. at 85-88. We are confident that the ___ court understood the prosecutor to say only that Lemieux's sentence likely was based on the amount of cocaine known to the government at the time he was sentenced. In any event, the court had the agreement before it and was in no way deceived. Third, the claim of ineffective assistance of counsel is not properly before us as we ordinarily do not consider such complaints when raised for the first time on direct appeal. See ___ United States v. Georgacarakos, No. 92-1890, slip op. at 18 ______________ _____________ (March 30, 1993); United States v. McGill, 952 F.2d 16, 19 (1st _____________ ______ Cir. 1991). This is not the "exotic exception" to the rule, see ___ McGill, 952 F.2d at 19, where the record is sufficiently ______ developed to allow reasoned consideration of the claim by the appeals court in the first instance. Indeed, this claim is ____________________ 3 This case does not involve allegations of either delayed disclosure or nondisclosure of Lemieux's statements, and Maldonado's reliance on United States v. Osorio, 929 F.2d 753, _____________ ______ 758 (1st Cir. 1991) and United States v. Perkins, 926 F.2d 1271, _____________ _______ 1275 (1st Cir. 1991), is therefore misplaced. -5- particularly suited to resolution by the district court because its gist is that that court was led astray by counsel's performance. Once again, even if review were appropriate, we would find no constitutional error. During cross-examination, trial counsel appropriately focused on Lemieux's testimony regarding the amount of cocaine and Maldonado's role in the conspiracy. Maldonado, in fact, acknowledges that the attorney reasonably "dealt with the crucial issue of quantity by accepting the veracity of that part of Lemieux's testimony . . . most favorable to his client . . . ." See Brief at 14 ("These arguments were certainly valid . . ___ .."). But he goes on to argue that a more direct challenge to Lemieux's testimony should have been made based on the witness's prior statements to authorities. Those statements, however, arguably lend support to the government's calculation of cocaine amounts.4 The decision not to utilize them therefore would ____________________ 4 Our computations show that the grand jury testimony and reports filed by two agents for the Bureau of Intergovernmental Drug Enforcement supported substantially more than the minimum of five kilograms of cocaine found by the district court. Maldonado relies in particular on Lemieux's statement to Agent Kelly that Maldonado delivered 1/2 to 1 pound of cocaine every two weeks for about 32 weeks. See App. at 9. Using the ___ smaller estimate, Maldonado asserts that this produces only about 3.6 kilograms, and that this amount is far less than the lowest quantity to which Lemieux testified at the hearing. But in so arguing, Maldonado is reading Kelly's memorandum selectively. The document also reports Lemieux's statement that he made trips to Providence and New York to pick up approximately 4 additional kilograms from Maldonado. See App. at 9-10. ___ Maldonado also points to Lemieux's statements to Agents Kelly and Small concerning a hiatus in drug dealing in early 1991, contending that the Small report describes a four-month period from January through April while the Kelly report notes an approximately two-month break. We do not read the memoranda as -6- indicate sound strategy. See Isabel v. United States, 980 F.2d ___ ______ _____________ 60, 65 (1st Cir. 1992) (quoting Barrett v. United States, 965 _______ _____________ F.2d 1184, 1193 & n.18 (1st Cir. 1992)) ("[W]e may not find a deficient professional performance in the constitutional sense unless the challenged decisions were not `plausible options.'"). The other document upon which Maldonado's claims rest is an Immigration and Naturalization Service investigative memorandum detailing Lemieux's prior drug dealing activities. At the time of sentencing, the district court knew that Lemieux was a convicted drug dealer testifying as part of a plea agreement with the government. We fail to see how the peripheral information that Lemieux also had dealt drugs independently in the past could have affected materially the district court's fact-finding on the amount of cocaine and Maldonado's role in the conspiracy.5 Maldonado falls far short of demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). __________ __________ Finally, we note that, at bottom, this appeal is a creative attempt to challenge as a matter of law the district court's unassailable factual findings that Maldonado was the leader of a ____________________ necessarily inconsistent. Small's report describes the time frame as "between the months of January 1991 to the beginning of April 1991," see App. at 4 -- which plainly excludes the month of ___ April and thus could be read to mean only the two months between _______ January and April. 5 Moreover, as previously noted, Lemieux did admit earlier dealing. -7- conspiracy involving the distribution of at least five kilograms of cocaine. In our view, Maldonado received fair treatment and was represented by competent counsel. Accordingly, his sentence is unchallengeable. Affirmed. ________ -8-