**UNITED STATES of America, Appellee,**

v.

**Albert WESTON, Defendant, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Paul R. TAYLOR, Defendant, Appellant.**

**Nos. 91–1546, 91–1547.**

United States Court of Appeals,
First Circuit.

Heard Jan. 9, 1992.

Decided March 25, 1992.

David Beneman, with whom Levenson, Vickerson & Beneman, Portland, Me., was on brief, for defendant, appellant Albert Weston.

Leonard I. Sharon, with whom Robert A. Laskoff, P.A., Lewiston, Me., was on brief, for defendant, appellant Paul R. Taylor.

Margaret D. McGaughey, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., and Nicholas M. Gess, Asst. U.S. Atty., Portland, Me., were on brief, for U.S.

Before BREYER, Chief Judge, ALDRICH and SELYA, Circuit Judges.

SELYA, Circuit Judge.

Following a joint trial, Paul R. Taylor and Albert Weston were convicted of threatening bodily injury with intent to retaliate for information given to law enforcement officials in violation of 18 U.S.C. § 1513 (1988). Taylor was also convicted of carrying a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c)(1) (1988). Taylor challenges certain rulings made at the trial. He and Weston both protest the district court's sentencing determinations. We affirm.

## I. BACKGROUND

We summarize the facts in the traditional post-conviction fashion, recounting the

evidence in the manner most sympathetic to the jury verdict. *See United States v. Mena,* 933 F.2d 19, 21–22 (1st Cir.1991); *United States v. Jimenez–Perez,* 869 F.2d 9, 10 (1st Cir.1989).

Taylor, Weston, and the target of their animadversions, Wendell Brann, were all members of the Exiles Motorcycle Club. The record suggests that cooperation with the authorities was deemed incompatible with membership in the club. Brann, who had previously been convicted of a federal firearms violation and had received a term of probation, began working surreptitiously with law enforcement officials. In that capacity, he bought cocaine from Michael Child, a local drug dealer. On September 11, 1990, Brann testified before a federal grand jury about Child's drug trafficking.

It is said that bad news travels fast. By the afternoon of September 11, speculation about Brann's songbird imitation infiltrated the Exiles Motorcycle Club. Weston promptly confronted Brann with the rumors. Brann denied them, claiming that he visited the federal courthouse only because he had failed a urine test administered in connection with his probation. Weston remained skeptical. Accompanied by Robert Roy, president of the club, Weston went to Brann's house, hurled epithets at him (e.g., "narc," "squeak," "rat"), stripped him of his "colors" (a vest emblematic of club membership), and ordered him to attend a meeting on September 14 to answer the allegations.

When Brann boycotted the scheduled meeting, the meeting came to him. On September 15, shortly after midnight, Weston called Brann's home to say that several Exiles were coming to collect club paraphernalia still in Brann's possession. Minutes later, a foursome (including Taylor, Weston, and Roy) appeared. After a strident exchange, Brann surrendered the paraphernalia without leaving the dwelling. Weston, who had been urging Brann to join the other men on the front lawn, then said: "C'mon outside, I want to grind your face in the ground where it belongs." At about this time, Taylor pointed a gun at Brann. Roy told Taylor to put the gun away, but demanded that Brann return the clubhouse keys. Brann complied.

Little mollified, Weston continued to demand that Brann join the group outside the house. Weston told Roy, loudly, that Brann "need[ed] to have his face in the dirt." Brann's girlfriend then summoned the police. When arrested, Taylor was found in possession of a loaded nine millimeter pistol. It was subsequently determined that he was licensed to carry the weapon. Still later, Child pled guilty to drug trafficking charges, obviating the need for further testimony by Brann.

Taylor, Weston, and Roy were indicted on charges of threatening bodily injury with intent to retaliate for information supplied to law enforcement officers (count 1), using threats and intimidation with intent to influence or prevent testimony (count 2), and using a firearm during the commission of a crime of violence (count 3).[1] The case

---

1. The indictment depended upon the following statutory language:

*Count 1*

Whoever knowingly engages in any conduct and thereby causes bodily injury to another person or damages the tangible property of another person, or threatens to do so, with intent to retaliate against any person for—

. . . . .

(2) any information relating to the commission or possible commission of a Federal offense . . . given by a person to a law enforcement officer;

or attempts to do so, shall be [punished as prescribed].

18 U.S.C. § 1513(a) (1988).

*Count 2*

Whoever knowingly uses intimidation or physical force, threatens, or corruptly per-

suades another person, or attempts to do so . . . with intent to—

(1) influence, delay, or prevent the testimony of any person in an official proceeding; [or]

(2) cause or induce any person to—

(A) withhold testimony . . . from an official proceeding;

shall be [punished as prescribed].

18 U.S.C. § 1512(b) (1988).

*Count 3*

Whoever, during and in relation to any crime of violence or drug trafficking crime . . . for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for [an additional] five years. . . .

was tried to a jury. The jury found Taylor and Weston guilty on count 1, but acquitted them on count 2. Although the court acquitted Weston on count 3, the jury found Taylor guilty on that charge. Roy was exonerated in full.

A sentencing hearing was held on May 24, 1991. In calculating the guideline sentencing range (GSR), the district court elevated the defendants' base offense levels by reference to U.S.S.G. § 2J1.2(b)(1). On count 1, the court sentenced both defendants to prison terms within their respective GSRs (thirty-three months in Taylor's case; twenty-seven months in Weston's case). The court sentenced Taylor to a further, consecutive prison term of five years on count 3.

## II. ASSERTED TRIAL ERRORS

Taylor complains of various trial-related errors. His complaints are full of sound and fury. They signify nothing of any substance.

### A. *Admission of the Plea Agreement.*

■ Brann initially agreed to cooperate in the narcotics investigation out of self-interest: he had been caught selling cocaine while on probation. He entered into a favorable plea agreement in exchange for his cooperation, including truthful testimony. Taylor claims that the court below erred in admitting the plea agreement into evidence in the instant case, and compounded the error by allowing the prosecutor to question Brann about the agreement. In Taylor's view, the evidence should have been excluded because it carried the implication that the prosecution was vouchsafing Brann's veracity as a witness.

Taylor's lamentation deserves short shrift. From aught that appears, Taylor's counsel made a strategic choice to highlight the evidence of Brann's "deal" with the authorities. Despite numerous opportunities, he did not object either to the introduction of the plea agreement or to

18 U.S.C. § 924(c)(1) (1988).

In respect to counts 1 and 2, the defendants were also charged with aiding and abetting in

the questioning about it. He then vigorously cross-examined Brann in respect to the bargain, seeking, apparently, to discredit Brann.

■ That Taylor's trial strategy did not succeed is of little consequence at this stage of the proceedings. Parties cannot have their cake and eat it, too. Thus, error may not ordinarily be premised on the admission of evidence or the examination of witnesses in the absence of contemporaneous objections. *See, e.g., United States v. Hunnewell*, 891 F.2d 955, 956 (1st Cir. 1989); *United States v. Griffin*, 818 F.2d 97, 99–100 (1st Cir.), *cert. denied*, 484 U.S. 844, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987).

■ To be sure, even without a contemporaneous objection, the court of appeals may review for plain error. Fed.R.Crim.P. 52(b). But, the threshold of plain error is extremely high. The doctrine encompasses only "those errors so shocking that they seriously affect the fundamental fairness and basic integrity of the proceedings conducted below." *Griffin*, 818 F.2d at 100. In this instance, the doctrine is irrelevant.

■ We have previously ruled, and today reaffirm, that no undue prejudice results from informing the jury of the contents of a standard plea agreement, to the end that the jury may better evaluate the credibility of a witness proffered by the government. *See United States v. Munson*, 819 F.2d 337, 344–45 (1st Cir.1987); *United States v. Martin*, 815 F.2d 818, 821 (1st Cir.), *cert. denied*, 484 U.S. 825, 108 S.Ct. 89, 98 L.Ed.2d 51 (1987). Here, Taylor has adduced no convincing reason to view either the plea agreement or the surrounding circumstances as anything beyond the stereotypical. The plea agreement contained only boilerplate provisions relative to disposition of the probation revocation charges pending against Brann, testimonial immunity, the need to furnish truthful testimony, and the like. The government's questioning about the agreement was restrained.

violation of 18 U.S.C. § 2 (1988).

The district court, solicitous of the defendants' rights, gave the jury careful instructions—to which Taylor never objected—about the purpose for admitting "plea agreement" evidence.[2] We discern no error, plain or otherwise. The evidence here posed less risk of vouching than did the evidence which we ruled properly admissible in *Martin,* 815 F.2d at 821–22.

Taylor's complaints about the prosecution's use of the plea agreement are meritless.

### B. Jury Instructions.

Taylor lodges two assertions of error concerning the jury instructions. First, he claims that the trial court failed to define certain statutory terms with sufficient precision, thus creating an unacceptable risk that the jury received a twisted impression of the law applicable to count 3. Second, he claims that the court improperly removed a question of fact from the jury's domain when, in instructing on count 3, the court denominated the crimes charged in counts 1 and 2 as "crimes of violence," and thus, predicate acts, for purposes of 18 U.S.C. § 924(c)(1) (quoted *supra* note 1). Neither asseveration withstands scrutiny.

In the first place, Taylor failed to object to the jury instructions when they were given. He likewise failed to request that any different, or additional, instructions be given. He has, therefore, forfeited the right to ordinary review and can prevail only upon a showing of plain error. *See United States v. McGill,* 952 F.2d 16, 17 (1st Cir.1991); *Griffin,* 818 F.2d at 99–100; *see also* Fed.R.Crim.P. 30.

■ In assessing claims of plain error, we consider the instructions as a whole, taking into account whether the putative errors so skewed the entire trial that the defendant's conviction offends due process. *See United States v. De La Cruz,* 902 F.2d 121, 122 (1st Cir.1990). While reversal of a conviction predicated on unpreserved instructional error is theoretically possible, "the actuality is seldom seen." *McGill,*

952 F.2d at 17. Taylor does not come close to presenting "the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977).

■ 1. Definition of Statutory Terms. Taylor claims that the district court should have defined certain words and phrases found in section 924(c)(1), e.g., "during and in relation to" and "uses or carries," but neglected to do so. It is Taylor's premise that, by not giving more precision to these terms, the court left open the possibility that his mere possession of a weapon on September 15, 1990, was enough, in and of itself, to justify a guilty verdict under count 3. The contention is groundless.

A district court's charge in a criminal case must be clear and explicit—but it need not be infinitely precise. Here, the phrases about which Taylor complains were neither "outside the common understanding of a juror ... [nor] so technical or specific as to require a definition." *United States v. Chenault,* 844 F.2d 1124, 1131 (5th Cir. 1988). Moreover, the district court told the jury that "the phrase 'used or carried a firearm' means that the firearm must have played a role in the crime, or must have been intended by the defendant to play a role in the crime." We cannot see how, in the context of this case, this instruction could have failed to allay the very fears that Taylor presently expounds.

We will not paint the lily. When, as in the case before us, the jury could not reasonably have doubted the tenor, meaning, or import of relevant statutory terms, we will not require a trial court, *sua sponte,* to essay a further definition. *See De La Cruz,* 902 F.2d at 123. We doubt that there was any instructional error in the respect cited by Taylor; we are certain there was no plain error.

**2.** The court told the jury, for example, to scrutinize Brann's testimony with special care, and to "consider whether the testimony may be colored

in such a way as to further the witness' own interest in procuring his own freedom by incriminating others."

**■** 2. *Crimes of Violence.* In charging the jury on count 3, the lower court explained that 18 U.S.C. § 924(c)(1) applied to persons who use or carry firearms during, in the words of the statute, "a crime of violence." The court then stated that, "as a matter of law," the crimes charged in counts 1 and 2 constituted "crime[s] of violence" within the ambit of section 924(c)(1). Taylor advances the rather startling idea that, by preempting the issue of whether retaliation and tampering constitute crimes of violence, the court deprived Taylor of a trial by jury on a factual issue.

Taylor's proposition stands logic on its ear. The district court never directed the jury to find that Taylor committed either the crimes charged in counts 1 and 2 or the crime charged in count 3. To the contrary, the court did no more than fulfill its proper function as the arbiter of the law, directing the jury as to the applicability of the term "crime of violence" in accordance with the definitions contained in the relevant statute. *See* 18 U.S.C. § 924(c)(3) (defining term "crime of violence"). The question of whether counts 1 and 2 alleged crimes of violence was neither a question of fact nor a mixed question of fact and law. It did not implicate the weighing of testimony, the assessment of credibility, the use of external facts, or the like. The factual elements legitimately at issue under count 3—whether Taylor committed the crimes and whether he actually used or carried a gun during and in relation to their commission—were left for the jury's determination. The district court, then, did not err in making the purely legal judgments necessary to guide the jury in its consideration of count 3 of the indictment.[3] *See United States v. Lanni,* 466 F.2d 1102, 1110 (3d Cir.1972) (trial court need not give instruction that would "invite[ ] the jury to make

its own interpretation" of a statute); *cf. United States v. Victoria–Peguero,* 920 F.2d 77, 86 (1st Cir.1990) (defendant not entitled to an instruction that would result in jury usurping judge's province), *cert. denied,* —— U.S. ——, 111 S.Ct. 2053, 114 L.Ed.2d 458 (1991).

### III. ASSERTED SENTENCING ERRORS

The sentencing guidelines provide for an eight-level enhancement "[i]f the offense involved ... threatening to cause physical injury to a person ... in order to obstruct the administration of justice." U.S.S.G. § 2J1.2(b)(1). The sentencing court elevated the defendants' base offense levels by reference to this provision. Both defendants assign error. In addition, Taylor advances a double jeopardy argument.

#### A. *Weston's Sentence.*

**■** At sentencing, there was vigorous debate concerning the applicability of U.S.S.G. § 2J1.2(b)(1) to Weston's conviction on the retaliation count. The colloquy focused almost exclusively on whether Weston's behavior was conduct undertaken "in order to obstruct the administration of justice."[4] The defense contended that the conduct could not be said to have been undertaken "in order to obstruct the administration of justice" unless Weston acted with the specific intention of inhibiting Brann's future cooperation. The government urged that, independent of whether Weston had intended actually to influence Brann's later conduct, the enhancement was proper so long as Weston's threats pertained to Brann's cooperation with the ongoing drug investigation. The district judge utilized the eight-level enhancement,

---

3. In arguing for a contrary result, Taylor reads *United States v. Argentine,* 814 F.2d 783 (1st Cir.1987), with the astigmatism of advocacy run amok. In *Argentine,* we set aside a conviction because the district judge, in lieu of having testimony reread, told a deliberating jury that certain discussions had taken place, thereby conclusively establishing facts which were legitimately in issue. *See id.* at 785–87. The core principle for which *Argentine* stands—"that a court may not step in and direct a finding of

contested fact in favor of the prosecution," *id.* at 788—is not in any way implicated in Taylor's case.

4. On appeal, both defendants have effectively conceded that count 1 (the offense of conviction) involved "threatening to cause physical injury to a person." Thus, the existence of the first qualifier contained in U.S.S.G. § 2J1.2(b)(1) is not in issue.

interpreting the jury verdict as equivalent to a finding that Weston intended to affect Brann's future conduct. The judge thought that such a finding was "an inevitable consequence factually of a conclusion that [Weston] did retaliate because of information given by Wendell Brann to law enforcement officers." The judge stated:

[Although] I am not persuaded by a preponderance of the evidence that this defendant went there with an actual affirmative intention to dissuade Wendell Brann from continuing to cooperate with the government.... I feel that I am bound by the jury's determination that he did retaliate against Wendell Brann, in the words of the charge, "with intent to retaliate for information given by the said Wendell Brann to law enforcement officers" and I think that jury determination on what is an element of the charged offense, as it is charged in the indictment, is sufficient to trigger the 8 level increase.

On appeal, Weston argues that his conviction on the retaliation count implied only that he sought to punish Brann for past cooperation; that the language of the guideline—"in order to obstruct the administration of justice," U.S.S.G. § 2J1.2(b)(1)—demands an intent to affect the victim's willingness to cooperate in the future; and that, therefore, the judge's conclusion that the government failed to prove that he (Weston) actually intended to dissuade Brann from future cooperation placed the enhancement out of reach. We find this analysis unpersuasive.

Weston's basic premise—that retaliation, in and of itself, is strictly past-oriented, having nothing to do with an intent to affect present or future conduct—seems much too crabbed. In practice, the real meaning of an act of "pure" retaliation is not necessarily gleaned from, or confined to, the act's retributive aspects. This is especially true when a retaliatory act occurs in response to conduct capable of repetition. In such circumstances, the act often contains an aposematic component, expressing both a backward-looking intention (designed to punish for past misdeeds) and a forward-looking intention (designed to deter repeat performances). The parental spanking administered upon discovering the child's hand in the cookie jar serves not only to punish for the attempted purloinment but to deter future incursions.

Retaliation against an informer, undertaken before the informer's utility to the authorities has been exhausted, fits comfortably within this integument. When the target of the retaliatory act has begun, but has not completed, his cooperation, the retaliatory act almost inevitably does double duty, manifesting a desire both to punish past disobedience and to forestall future disobedience. Here, at a minimum, it was a forceful reminder of the club's policy against cooperation with governmental authorities. Thus, Weston's notion of a fundamental incompatibility between a conviction for retaliation and an enhancement under section 2J1.2(b)(1) is untenable.

■ Weston also posits error premised on a claim that the lower court abdicated its responsibilities when, in deciding to apply U.S.S.G. § 2J1.2(b)(1), it deferred to the guilty verdict. We discern no error. Although an acquittal is not always conclusive on an issue for sentencing purposes due to differing standards of proof, *see, e.g., United States v. Mocciola*, 891 F.2d 13, 16 (1st Cir.1989), a guilty verdict, not set aside, binds the sentencing court to accept the facts necessarily implicit in the verdict. *Cf., e.g., United States v. Whitetail*, 956 F.2d 857, 864 (8th Cir.1992) (district court may depart downward under U.S.S.G. § 5K2.12 on grounds of duress although jury rejected duress defense at trial because duress as a ground for departure "does not require proof of the same elements necessary to establish [the defense of duress] at trial"). Thus, the district court was correct in recognizing the primacy of the jury's determination on the issue of Weston's retaliatory intent.

Weston's best argument is that section 2J1.2(b)(1) contains language that can only be applied to conduct designed primarily to affect the course of future events. This argument hinges on the phrase "in order to obstruct the administration of justice." It

assumes that phrase is both future-oriented and simplistically clear. In fact, the phrase is anything but self-defining. Many kinds of actions and many kinds of outcomes can fit linguistically within the phrase's loosely woven confines.

■ When, as here, the language of a guideline is not fully self-illuminating, a court should look to the application notes and commentary for guidance as to the scope of the provision. *See United States v. Bierley*, 922 F.2d 1061, 1066 (3d Cir. 1990); *see also* U.S.S.G. § 1B1.1(i) (sentencing court should refer "to any ... policy statements or commentary in the guidelines that might warrant consideration"). While the application notes and commentary do not possess the force of law, they are important interpretive aids, entitled to considerable respect. *United States v. White*, 888 F.2d 490, 497 (7th Cir.1989); *cf. United States v. Anderson*, 942 F.2d 606, 613–14 (9th Cir.1991) (en banc) (discussing interrelationship between guidelines and commentary).

In this instance, the policy statements cast light on the problem. The commentary lists 18 U.S.C. § 1513 in the compendium of statutory provisions to which the guideline presumptively applies. U.S.S.G. § 2J1.2, comment. Moreover, in a non-exhaustive recital, the commentary describes "[n]umerous offenses" that "may constitute obstruction of justice," including "causing a witness bodily injury ... in retaliation for providing testimony, information or evidence in a federal proceeding." *Id.*, comment. (backg'd). The commentary also makes clear that the conduct

giving rise to the enhancement "may ... range from a mere threat to an act of extreme violence." *Id.*

We are of the opinion that, when silhouetted against this backdrop, conduct such as the court below supportably attributed to Weston—threatening a witness with physical injury in retaliation for the witness' past cooperation with federal authorities, while the federal criminal proceeding in question is still pending—can trigger an elevation of the defendant's offense level under U.S.S.G. § 2J1.2(b)(1). We think this view is compatible with the language of the guideline and coheres with the Sentencing Commission's obvious intention of making "obstruction of justice" sufficiently inclusive that it can encompass a wide range and rich variety of antisocial conduct. Hence, the eight-level enhancement was proper in this case even if Weston lacked "an actual affirmative intention" to deter Brann from providing testimony in the future.[5]

### B. *Taylor's Sentence.*

Taylor challenges his sentence on two grounds. Like Weston, he assails the eight-level enhancement for obstruction of justice. In addition, he maintains that the enhancement, when taken in conjunction with the sentence imposed on count 3, subjected him to double jeopardy.

1. *Obstruction of Justice.* In respect to the section 2J1.2(b)(1) enhancement, Taylor's case is factually distinguishable from Weston's.[6] At sentencing, the district court found that Taylor's actions were un-

---

**5.** Weston and Taylor were sentenced under an amended version of U.S.S.G. § 2J1.2(b)(1), effective November 1, 1989. The original guideline required the eight-level enhancement only "[i]f the defendant obstructed or attempted to obstruct the administration of justice by causing or threatening to cause physical injury." U.S.S.G. § 2J1.2(b)(1) (1987). The amended guideline required the enhancement so long as "the offense involved causing or threatening to cause physical injury ... in order to obstruct the administration of justice." U.S.S.G. § 2J1.2(b)(1) (Nov. 1989). This change was made to ensure that the relevant conduct principles, U.S.S.G. § 1B1.3, would be fully operative in respect to the enhancement. *See* T. Hutchinson & D. Yellen, *Federal Sentencing Law and*

*Practice* 166 (Supp.1991). In this case, since Weston's behavior, by itself, adequately grounded the eight-level enhancement, we are not required to determine, and thus express no opinion on, whether the amended guideline could also be applied to Weston derivatively, on the basis of Taylor's conduct. *See* U.S.S.G. § 1B1.3(a)(1) (relevant conduct rule with respect to persons acting in concert).

**6.** The distinguishing features operate in the government's favor. At any rate, insofar as Taylor's arguments parallel Weston's, they are unavailing for the reasons heretofore discussed. *See supra* Part III(A).

dertaken for the express purpose of "influencing [Brann's] conduct as a cooperating witness for the government"; that Taylor intended "thereby to obstruct the administration of justice"; and that, context considered, Taylor's menacing behavior demonstrated "that he did affirmatively intend to interfere with Mr. Brann's cooperation with the government."

■■■ We review findings of fact at sentencing only for clear error. *See United States v. David,* 940 F.2d 722, 739 (1st Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 908, 116 L.Ed.2d 809 (1992); *United States v. Ruiz,* 905 F.2d 499, 507–08 (1st Cir.1990). Here, Taylor has failed to muster a credible "clear error" argument. His actions were plainly minatory. The most that can be said on his behalf is that those actions were not *necessarily* geared toward interfering with Brann's ongoing cooperation. That is scant solace in the face of findings amply rooted in the record below, measurable under a strict standard of review. It is perhaps trite, but nonetheless true, that "where there is more than one plausible view of the circumstances, the sentencing court's choice among supportable alternatives cannot be clearly erroneous." *Ruiz,* 905 F.2d at 508. So here.

■■■ 2. *Double Jeopardy.* Taylor's remaining contention is unique to his circumstances. He strives to convince us that imposition of the eight-level enhancement for threatening to cause physical injury in order to obstruct justice, when coupled with the consecutive sentence imposed for carrying a firearm during and in relation to a crime of violence, constituted double punishment for a single act, thereby violating the Double Jeopardy Clause of the Fifth Amendment.

The Double Jeopardy Clause guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. We recently observed that:

The protection of the Clause is threefold; it safeguards an individual against (1) a second prosecution for the same offense, following an acquittal; (2) a second prosecution for the same offense, following a conviction; and (3) multiple punishments for the same offense.

*United States v. Rivera–Martinez,* 931 F.2d 148, 152 (1st Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 184, 116 L.Ed.2d 145 (1991). Taylor attempts to invoke the third of these protections. His effort is misguided.

Taylor's thesis wrongly presumes that, had he not used a firearm during the confrontation with Brann, he would not have been subject to the eight-level enhancement. But, the enhancement under section 2J1.2(b)(1) is triggered by threats to cause physical injury whether by means of a firearm or in any other fashion. As the court below noted, the enhancement could equally have been imposed if Taylor, instead of using a firearm, "ha[d] used a wet noodle and gotten the same result." The statute undergirding count 3, however, *requires* the use of a firearm. *See* 18 U.S.C. § 924(c)(1). Thus, the statute demands proof of a distinctive fact—the presence of a firearm—that the guideline enhancement does not demand. Conversely, the guideline demands proof of various facts (e.g., a threat to inflict physical injury) that section 924(c)(1) does not demand. Hence, there was no constitutional infirmity in the consecutive sentences meted out to Taylor. *See Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) ("The applicable rule is that; where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied . . . is whether each provision requires proof of an additional fact which the other does not."); *United States v. Ortiz–Alarcon,* 917 F.2d 651, 653 (1st Cir.1990) (same), *cert. denied,* —— U.S. ——, 111 S.Ct. 2035, 114 L.Ed.2d 120 (1991); *see also United States v. Koonce,* 945 F.2d 1145, 1154–55 (10th Cir.1991).[7]

---

7. *Busic v. United States,* 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980), much bruited by Taylor, is not a fair congener. In *Busic,* the

Supreme Court held that 18 U.S.C. § 924(c) could not be applied to a defendant who used a firearm in the course of a felony committed in

By the same token, it is inconsequential for purposes of the Double Jeopardy Clause that Taylor actually used a firearm, not a wet noodle, in threatening Brann. Multiple punishment analysis for double jeopardy purposes is not concerned with whether the proof underlying two different punishments overlaps in certain respects. Rather, the requisite analysis focuses exclusively on the distinctiveness of the elements of the offenses charged. *See Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 2093 n. 12, 109 L.Ed.2d 548 (1990); *Mena*, 933 F.2d at 29.

## IV.  CONCLUSION

We need go no further.  The defendants' assignments of error are uniformly unavailing.  The book may, therefore, be closed on this sordid chapter in the chronicles of the Exiles Motorcycle Club.

*Affirmed.*

violation of a statute which itself authorized enhancement if a dangerous weapon were used. *Id.* 100 S.Ct. at 1752–55.  Thus, the "same act or transaction" threshold framed by *Blockburger* and its progeny was crossed in *Busic.*  But, the threshold was not crossed here.