USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT No. 95-1395 UNITED STATES OF AMERICA, Appellee, v. MICHAEL D. SHADDUCK, Defendant, Appellant.  ____________________ No. 95-1396 UNITED STATES OF AMERICA, Appellee, v. ANDREA D. SHADDUCK, Defendant, Appellant.  ____________________ No. 96-1342 UNITED STATES OF AMERICA, Appellee, v. MICHAEL D. SHADDUCK, Defendant, Appellant.  ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Morris E. Lasker,* Senior U.S. District Judge] __________________________  ____________________  ____________________ *Of the Southern District of New York, sitting by designation. Before Cyr, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________  ____________________ James B. Krasnoo with whom Law Offices of James B. Krasnoo was on ________________ _______________________________ brief for appellants. Mark J. Balthazard, Assistant United States Attorney, with whom ___________________ Donald K. Stern, United States Attorney, was on brief for appellee. _______________  ____________________ April 24, 1997  ____________________ 2 CYR, Circuit Judge. Appellants Michael and Andrea CYR, Circuit Judge _____________ Shadduck challenge the judgments of conviction and sentence entered against them for bankruptcy fraud, see 18 U.S.C. 152, ___ following their four-day jury trial. We affirm the convictions, but vacate, in part, the sentence imposed upon Michael Shadduck and remand for resentencing.  I I BACKGROUND1 BACKGROUND __________ Appellant Michael Shadduck ("Shadduck"), a self-em- ployed insurance salesman, invested in several insurance policies and a pension fund with Guardian Investor Services Corporation ("Guardian"). Three days before the Shadducks filed their joint chapter 11 petition on June 4, 1993, Shadduck had requested the maximum loan advances available on four Guardian life insurance policies. The chapter 11 petition, unaccompanied by schedules, listed liabilities totaling $2,269,381.13 to the twenty largest unsecured creditors.  On the day the joint chapter 11 petition was filed, Mrs. Shadduck drew an $8,000 check on their personal checking account and endorsed it over to her husband. Three days later,  ____________________ 1Viewing the evidence in the light most favorable to the verdicts, we recite the facts as the jury reasonably could have found them. United States v. Josleyn, 99 F.3d 1182, 1185 n.1 ______________ _______ (1st Cir. 1996), cert. denied, 117 S. Ct. 959 (1997). We note, ____ ______ however, that the record on appeal is woefully incomplete, particularly as it includes no district court trial transcript. Of course, the proponent of a claim must "bear the brunt of an insufficient record on appeal." Real v. Hogan, 828 F.2d 58, 60 ____ _____ (1st. Cir. 1987). See also LaRou v. Ridlon, 98 F.3d 659, 664 n.8 ___ ____ _____ ______ (1st Cir. 1996). 3 four checks totaling $124,383.66 were deposited in a bank account in the name of John Shepard, a friend of Shadduck. Three checks had been issued to Shadduck by Guardian and represented portions of the aforementioned loan proceeds, as well as policy dividends. The fourth was the $8,000 check withdrawn by Mrs. Shadduck from the joint account three days earlier.  At the creditors meeting on June 14, Shadduck denied having made any payment in excess of $600 to any creditor within the 90-day period preceding June 4, denied having a bank account, and disavowed any beneficial interest either in insurance poli- cies or a pension plan. Mrs. Shadduck, who was continuing to write checks on their joint checking account during this time, remained silent as her husband made these misrepresentations under oath.  Following the creditors meeting, two other Guardian checks, totaling $13,346.01, payable to Shadduck and endorsed over to Shepard, were deposited in the Shepard account. Two days later Shadduck gave Shepard a $73,900 check, drawn on Shadduck's Guardian pension plan and endorsed over to Shepard. At the time, the Shadduck pension plan account contained $118,339.05. On July 19, 1993, a $33,517.36 check was drawn on the Shadduck pension plan account, representing the balance in the pension plan after the required $10,921.69 withholding for federal income tax. On July 1, the Shadducks filed their bankruptcy sched- ules, signed the same day under penalty of perjury, asserting that they had no interest in pension plans or insurance policies 4 and, further, that they had no bank account. Throughout this entire period, however, Shadduck had funds in his pension plan and Mrs. Shadduck continued to write checks on their joint checking account. Shepard subsequently drew checks totaling $171,211.12 to Shadduck on September 29 and November 2, 1993, in amounts mirroring the checks Shadduck had issued to Shepard the previous June. Three of these checks, totaling $17,134.70, explicitly noted that the proceeds represented pension plan funds.  The Shadducks were indicted on January 19, 1994: he on four counts, for concealing assets and falsely stating that he had no bank account, insurance policies, or pension plan, in violation of 18 U.S.C. 152; she on one count, for falsely stating she had no bank account. At trial, Shadduck admitted making false statements but nevertheless insisted that he had not listed the pension plan funds on the schedules because they were exempt, even though he concededly had failed also to list any pension plan funds as property claimed exempt. Shadduck further _______ ______ testified that the monies invested in the insurance policies belonged to clients who had requested that he invest approxi- mately $85,000 in their behalf. Shadduck admitted making false statements at the creditors meeting and on the bankruptcy sched- ules, but vouchsafed that his wife had not known what was going on. After the jury returned guilty verdicts against both defendants, the district court sentenced Shadduck to twenty-seven 5 months' imprisonment, including enhancements based on the total intended loss, see U.S.S.G. 2F1.1(b)(1) (Nov. 1994), violation ___ of a judicial order, id. 2F1.1(b)(3)(B), and defrauding multi- ___ ple victims, id. 2F1.1(b)(2)(B). Shadduck appeals his convic- ___ tions and sentence. Mrs. Shadduck, who was sentenced to two years' probation, principally challenges her conviction.2 II II DISCUSSION DISCUSSION __________ 1. Andrea Shadduck  1. Andrea Shadduck _______________ Andrea Shadduck concedes that she purchased the $8,000 bank check with funds drawn from the joint checking account and endorsed it to her husband, that she signed the bankruptcy schedules listing no bank account, and that she remained silent at the creditors meeting while her husband falsely represented that they had no bank account. She nonetheless contends that there was insufficient evidence that she intentionally made a false statement, since her husband testified to her lack of knowledge.  There was ample evidence to support the conviction. The jury reasonably could infer from all the circumstances, especially the timing of the various transactions, that she possessed the requisite fraudulent intent. She drew an $8,000  ____________________ 2Although both appellants challenge the 2F1.1(b)(3)(B) enhancement, the district court imposed a downward departure before sentencing Mrs. Shadduck to probation. United States v. ______________ Shadduck, 889 F. Supp. 8, 11-12 (D.Mass. 1995). Thus, no purpose ________ would be served by remanding for resentencing in these circum- stances.  6 bank check on the unscheduled joint checking account the very day she and her husband signed and filed their joint chapter 11 petition. She signed the bankruptcy schedule stating she had no bank account, yet continued to draw checks on the joint account for more than three months, even after her husband, in her presence, falsely denied the existence of any such account at the creditors meeting. This circumstantial evidence alone supported a reasonable inference that her motive in making the $8,000 withdrawal from the joint checking account on the eve of bank- ruptcy was to prevent its disclosure to creditors. Finally, fraudulent intent was readily inferable from the fact that the Shadducks omitted from their joint list of claimed exemptions only the property not elsewhere disclosed as assets on their schedules.3 Moreover, the jury was free to discredit the excul- patory testimony offered by her husband, United States v. ______________ Restrepo-Contreras, 942 F.2d 96, 99 (1st Cir. 1991), and we are __________________ not at liberty to presume otherwise, see United States v. Laboy- ___ _____________ ______ Delgado, 84 F.3d 22, 26 (1st Cir. 1996) (noting that appellate _______ court must "resolve all disagreement regarding the credibility of witnesses to the government's behoof"). 2. Michael Shadduck  2. Michael Shadduck  ________________  ____________________ 3Mrs. Shadduck also urges us to consider testimony presented by her counsel at a postjudgment hearing to correct Shadduck's sentence pursuant to 28 U.S.C. 2255. Counsel testified that the joint checking account had been inadvertently omitted from the schedules. In evaluating a challenge to the sufficiency of the evidence on direct appeal, however, we may consider only the evidence presented at trial. See United States v. Laboy-Delgado, ___ _____________ _____________ 84 F.3d 22, 26 (1st Cir. 1996).  7 a. Supplemental Jury Instruction4 a. Supplemental Jury Instruction _____________________________ Shadduck claims the jury verdict was tainted by the response to a question submitted by the jury.5 Although Shadduck would have us isolate the trial court's supplemental instruction, the law is clear that it "'must be viewed in the context of the overall charge.'" United States v. Femia, 57 F.3d 43, 47 (1st _____________ _____ Cir.) (quoting Cupp v. Naughten, 414 U.S. 141, 146-47 (1973)), ____ ________ cert. denied, 116 S. Ct. 349 (1995). The general charge had ____ ______ explained, with respect to each count, that the jury would need to determine whether the alleged false statements and concealment had been "knowing" and "fraudulent." There was no objection to  ____________________ 4We "review the propriety of jury instructions for abuse of discretion." United States v. Mitchell, 85 F.3d 800, 809 (1st _____________ ________ Cir. 1996).  5Shadduck further complains, for the first time, that the following comment about the weather caused the jury to hurry its deliberations:  Now it's 3 o'clock in the afternoon. It's a pretty nasty afternoon in case you haven't been able to see the weather in the jury room. Counsel and I are willing to stay as long as you wish. What I normally do - and what I will do - is about 4 o'clock, I'll come down and I would normally excuse you at that time unless the jury or a majority, at least, of the jury believes that they are so close to completing the case that they'd like to stay a little bit longer. But if that's not the case, then I will excuse you to re- sume on Monday morning. There is nothing in this comment to suggest that the jury was pressured to rush its verdicts. Rather, the trial judge made abundantly clear that he was willing to remain as long as neces- sary that afternoon or to reconvene the following Monday. __ Moreover, the defense failed to object to this reasonable proce- dure.  8 the general charge. Several hours after retiring to deliberate, the jury inquired in writing whether there would be a change in the ownership of certain funds invested in an annuity contract under the name of one Leonard Roy were the jury to find Shadduck guilty. The trial judge replied that there was no evidence on which to base a response to their inquiry and that they were not to consider this collateral matter in arriving at their verdicts. The court added:  You should decide whether you believe that [Shadduck] intentionally made a false state- ment or he did not make a false statement in regard to this material. That is the issue before you. Shadduck objected that a further instruction was required to the effect that the jury would need to determine whether Shadduck had made the statements "fraudulently." After explaining that its response was consistent with its earlier and more detailed charge, the court denied the request. Later, Shadduck unsuccess- fully moved for a mistrial on the ground that the response to the jury inquiry effectively had eliminated an element of the of- fense. Viewed in the context of the entire charge, and given the clear signal from the trial judge that the jury inquiry related to a collateral matter not appropriate for their consid- eration, the response was entirely proper. It did nothing to disturb, let alone gainsay, the very clear instruction in the general charge; viz., that the jury must determine whether the ____ 9 alleged conduct had been undertaken "knowingly" and "fraudulent- ly." Now, . . . the offenses . . . are al- leged to have been done "knowingly and fraud- ulently." An act or failure to act is "knowingly" done if it's done voluntarily and intention- ___________ ___ __________ ally and not because of mistake or accident ____ or any other innocent reason. The purpose of requiring that the gov- ernment . . . prove that a defendant acted "knowingly" is to insure that no one is con- __ ______ ____ __ ___ __ ____ victed because of an act, or failure to act, ______ _______ due to a mistake or an accident or some - any innocent reason. An act or failure to act is "fraudulent- ly" done if it is done willfully and with the _________ ___ ____ ___ intent to deceive or cheat any creditor, ______ __ _______ ___ _________ trustee or bankruptcy judge. _______ __ __________ _____ An act or failure to act is "willfully" done if it is done voluntarily and intention- ___________ ___ __________ ally and with a specific intent to do some- ____ ___ ____ _ ________ ______ __ __ _____ thing which the law forbids; that is to say, _____ _____ ___ ___ _______ ____ __ __ ___ for bad purpose either to disobey or disre- ___ ___ _______ gard the law. .... The intent with which an act is done may also be inferred from the nature of the act itself. Accordingly, intent, willfulness and knowledge are usually established by sur- rounding facts and circumstances as of the time the acts in question occurred or the events took place and the reasonable infer- ences to be drawn from them. (Emphasis added.) Thus, the court defined both "knowingly" and "fraudulently" through direct reference to the voluntariness, as well as the general and specific intent, animating Shadduck's conduct. Against the backdrop of this earlier detailed instruc- tion, we are not persuaded that any significant risk of confusion arose from the subsequent umbrella response to the jury that it was to decide whether Shadduck "intentionally" made false state- 10 ments. See United States v. Yefsky, 994 F.2d 885, 899 (1st Cir. ___ _____________ ______ 1993) (instruction on "intent," rather than "specific intent," held adequate given court's earlier definition of "willfully" as encompassing specific intent); United States v. Nichols, 820 F.2d _____________ _______ 508, 511 (1st Cir. 1987) (unnecessary to instruct on specific intent "[g]iven the extensive instruction on 'knowingly and willfully' [delivered] moments earlier"). b. Calculation of Intended Loss (U.S.S.G. 2F1.1) b. Calculation of Intended Loss (U.S.S.G. 2F1.1) ______________________________________________ The district court imposed an eight-level sentence enhancement based on its finding that Shadduck had intended to cause loss totaling $246,280. See U.S.S.G. 2F1.1, comment. ___ (n.7). ("[I]f [the] loss that the defendant was intending to inflict can be determined, this figure will be used if it is greater than the actual loss."). On appeal, Shadduck claims for the first time that the loss calculation, which included the loans obtained against the Guardian insurance policies and the funds withdrawn from the pension plan, must be set aside because those monies were in all events exempt under Bankruptcy Code  522, hence not subject to administration in bankruptcy.6 As  ____________________ 6Shadduck further claims, and the government concedes, that the presentence report ("PSR") initially "double counted" the $8,000 removed from the joint checking account the day the Shadducks filed for bankruptcy. Although the government claims that the error was corrected in an amended PSR, the record contains no PSR. In all events, any such double counting would have been harmless, since the total-loss category was unaffected. See U.S.S.G. 2F1.1(b)(1)(I) (eight-level increase for loss ___ exceeding $200,000 but less than $350,000). Thus, addressing the error, if any, could have no effect on the sentence. See United ___ ______ States v. Sepulveda, 15 F.3d 1161, 1199 (1st Cir. 1993) (noting, ______ _________ in context of drug-quantity calculation, that "[i]t is unneces- sary to address an allegedly erroneous sentencing computation if, 11 Shadduck failed to object below, we review only for "plain error." United States v. Carrington, 96 F.3d 1, 6 (1st Cir. _____________ __________ 1996), cert. denied, 65 U.S.L.W. 3648 (U.S. March 24, 1997) (No. ____ ______ 96-8027); see also Koon v. United States, 116 S. Ct. 2035 (1996); ___ ____ ____ _____________ United States v. Olano, 507 U.S. 725, 734 (1993) ("plain error" _____________ _____ means "obvious" error); see also Fed. R. Crim. P. 52(b).  ___ ____ The present contention assumes, contrary to our caselaw, that property of the debtor neither claimed nor set apart as exempt would not have been subject to administration. See Petit v. Fessenden, 80 F.3d 29, 33 (1st Cir. 1996); Mercer v. ___ _____ _________ ______ Monzack, 53 F.3d 1, 3 (1st Cir. 1995), cert. denied, 116 S. Ct. _______ ____ ______ 1317 (1996); see also 11 U.S.C. 522(l) (requiring debtor to ___ ____ list property claimed exempt); Fed. R. Bankr. P. 4003(b). As the Supreme Court recently held, Bankruptcy Code 522(l) and Bank- ruptcy Rule 4003(b) are to be interpreted in accordance with their literal intendment. See Taylor v. Freeland & Kronz, 503 ___ ______ _________________ U.S. 638, 643-45 (1992); see also Mercer, 53 F.3d at 3. ___ ____ ______ Virtually all property of the debtor, except as provid- ed in Bankruptcy Code 541(b),(c)(2)&(d), becomes "property of the estate" by operation of law without regard to whether it is listed on the schedules. Id. 541(a). Shadduck has never ___ argued that these pension plan monies were not "property of the  ____________________ and to the extent that, correcting it will not change the appli- cable offense level"). 12 estate,"7 but only that they were not subject to process under applicable state law.8   ____________________ 7Bankruptcy Code 541(c)(2) excludes from "property of the estate" an interest in a trust subject to transfer restrictions enforceable under applicable nonbankruptcy law. See Patterson v. ___ _________ Shumate, 504 U.S. 753, 757-58 (1992). Patterson held that the _______ _________ antialienation provisions in ERISA-qualified plans constitute transfer restrictions for 541(c)(2) purposes, hence such plans are not "property of the estate." Id. at 760. See also In re ___ ___ ____ _____ Yuhas, 104 F.3d 612, 614-16 (3d Cir. 1997) (IRA funds not "prop- _____ erty of estate"); In re Meehan, 102 F.3d 1209, 1214 (11th Cir. ____________ 1997) (same). Not only was this argument not raised below, but there is no record evidence, see supra n.1, that Shadduck's ___ _____ pension plan even contained transfer restrictions. 8Nor does the record on appeal indicate that this claim was preserved below. Shadduck contends that Mass. Gen. Laws ch. 235, 34A, exempts pension plan funds which do not exceed seven percent of the debtor's total income within the five-year period preceding bankruptcy, and that Mass. Gen. Laws ch. 175, 119A, exempts insurance policies under certain conditions. In any event, this argument proves too much.  13 Were we to adopt the regime advocated by Shadduck, property fraudulently concealed throughout the course of a bankruptcy proceeding nonetheless would become exempt by opera- tion of law.9 By contrast, property duly claimed exempt by an honest debtor does not become exempt by operation of law unless no "party in interest" objects to the exemption claim within the allotted thirty-day period. See In re Edmonston, 107 F.3d 74, 76 ___ _______________ (1st Cir. 1997); 11 U.S.C. 522(l); Fed. R. Bankr. P. 4003(b). Thus, the argument advanced by Shadduck would short-circuit the exemption-claim screening process explicitly envisioned in Fed. R. Bankr. P. 4003(b), which provides that the thirty-day limita- tion on objections to exemption claims "does not begin to run until the debtor lists the 'property claimed as exempt.'" Mercer, 53 F.3d at 3 (quoting Fed. R. Bankr. P. 4003(b)). See ______ ___ also Petit, 80 F.3d at 33 ("Unless and until a debtor files a ____ _____ timely claim of exemptions, however, as required by the Bankrupt- cy Code and the Federal Rules of Bankruptcy Procedure, there is no 'list of property claimed exempt' for the trustee or creditors to oppose."). We therefore reject it and affirm the district court's "intended loss" calculation.  ____________________ 9Shadduck seeks to supplement the record with "newly discov- ered evidence" which allegedly establishes that these monies were considered exempt by the bankruptcy court even though never claimed exempt. The supplemental submissions a hearing transcript in which the bankruptcy judge took a matter under advisement, and a letter from counsel for the trustee suggesting that the bankruptcy court might find that the pension plan funds were not reachable by creditors establish nothing of the sort. We simply note, therefore, that the so-called "evidence" would not have affected the outcome.  14 c. Enhancement for Violating a Judicial c. Enhancement for Violating a Judicial ____________________________________ Order (U.S.S.G. 2F1.1(b)(3)(B))10 Order (U.S.S.G. 2F1.1(b)(3)(B)) ________________________________ (i) Judicial Order (i) Judicial Order ______________ The district court imposed a two-level enhancement on the ground that Shadduck had violated a judicial "order," within the meaning of U.S.S.G. 2F1.1(b)(3)(B) (1994) (prescribing two- level enhancement for violating "any judicial or administrative order, injunction, decree, or process"), by repeatedly flouting the obvious intendment behind the Bankruptcy Rules and Official Forms that all property of the debtor be disclosed. See United ___ ______ States v. Shadduck, 889 F. Supp. 8, 10 (D. Mass. 1995). See also ______ ________ ___ ____ United States v. Bellew, 35 F.3d 518, 520-21 (11th Cir. 1994) _____________ ______ (affirming enhancement because Bankruptcy Rules and Official Forms are "judicial orders").  Shadduck contends that the term "order," as used in section 2F1.1(b)(3)(B), contemplates only a specific order, such as a consent decree or an adjudicative order or mandate entered pursuant to judicial direction. He argues that to uphold the enhancement absent a specific order would permit its automatic application in any bankruptcy fraud case, simply by virtue of the forum in which the false statements were made and without regard to the aggravated criminal intent which the enhancement was designed to redress. As hereinafter discussed, we are unable to agree that a bankruptcy rule or official form is a "judicial  ____________________ 10The guideline interpretation underlying the district court ruling is reviewed de novo. United States v. Garcia, 34 F.3d 6, __ ____ _____________ ______ 10 (1st Cir. 1994). 15 order," as the term is used in section 2F1.1(b)(3)(B). First, it is clear that the bankruptcy judge never entered an order specifically directing Shadduck to disclose property of the debtor. See Bankruptcy Code 541(a), 11 U.S.C. ___ 541(a). The district court implicitly acknowledged as much through its reliance on the several verification requirements in the Official Forms, see Official Bankr. Forms 1, 6, 11 U.S.C. ___ (requiring debtor's signature verifying assertions in petition and schedules); Fed. R. Bankr. P. 1008 (mandating verification of forms); 9011 (signature constitutes representation by signatory that information provided is true). See Shadduck, 889 F. Supp. ___ ________ at 10; see also Bellew, 35 F.3d at 520. Thus, as the bankruptcy ___ ____ ______ court entered no "order, injunction or decree" directing Shadduck to disclose property of the debtor, the enhancement cannot stand unless the district court correctly determined that the universal admonitions in the various Official Forms and/or Bankruptcy Rules applicable to all debtors in bankruptcy proceedings constitute "judicial or administrative order[s]" within the meaning of U.S.S.G. 2F1.1(b)(3)(B). We turn to the guideline commentary for further assis- tance. See Stinson v. United States, 508 U.S. 36, 42-43 (1993) ___ _______ ______________ ("Commentary which functions to interpret [a] guideline or explain how it is to be applied controls.") (internal quotation marks omitted); see also United States v. Weston, 960 F.2d 212, ___ ____ _____________ ______ 219 (1st Cir. 1992). The application note accompanying U.S.S.G. 2F1.1(b)(3)(B) focuses upon violations of prior orders, injunc- _____ 16 tions, and decrees. See U.S.S.G. 2F1.1, comment. (n.5) (ad- ___ verting to defendant's "knowledge of the prior decree or or- der").11 The accompanying exemplar describes a defendant who had been enjoined in a prior proceeding from engaging in certain conduct, but who violated the injunction anyway by committing the fraud for which he was awaiting sentence. Id., see supra n.11. ___ ___ _____ Thus, the commentary makes clear that the rationale for the enhancement is to redress the "aggravated criminal intent" inherent in violating a prior order specifically enjoining the _ _____ _____ defendant, or an entity the defendant controlled, from engaging _________ in the fraudulent conduct which formed the basis for the offense of conviction. U.S.S.G. 2F1.1, comment. (backg'd). In the instant case, no pertinent order, decree or  ____________________ 11The application note provides in full: Subsection (b)(3)(B) provides an adjustment for violation of any judicial or administra- tive order, injunction, decree, or process. If it is established that an entity the de- __ ______ ___ ___ fendant controlled was a party to the prior _______ __________ ___ _ _____ __ ___ _____ proceeding, and the defendant had knowledge ___________ ___ ___ _________ ___ _________ of the prior decree or order, this provision __ ___ _____ ______ __ _____ ____ _________ applies even if the defendant was not a spe- _______ ____ __ ___ _________ ___ ___ _ ____ cifically named party in that prior case. _________ _____ _____ __ ____ _____ ____ For example, a defendant whose business was previously enjoined from selling a dangerous product, but who nonetheless engaged in fraudulent conduct to sell the product, would be subject to this provision. This subsec- tion does not apply to conduct addressed elsewhere in the guidelines; e.g., a viola- ____ tion of a condition of release (addressed in J.7 (Offense Committed While on Release)) or a violation of probation (addressed in 4A1.1 (Criminal History Category)). (Emphasis added.) 17 injunction ever entered prior to the bankruptcy fraud perpetrated by Shadduck, either in the bankruptcy proceeding itself or in any prior judicial or administrative proceeding. To be sure, Shadduck attempted to cover up the bankruptcy fraud with false statements in the petition and schedules submitted to the bank- ruptcy court, see Official Bankr. Forms 1, 6, 11 U.S.C, as well ___ as under oath at the creditors meeting. Thus, by concealing property of the debtor notwithstanding the copious admonitions, instructions, and verifications in the Bankruptcy Rules and Official Forms, Shadduck unquestionably committed bankruptcy __________ fraud. See 18 U.S.C. 152. _____ ___ Nevertheless, if the government cannot demonstrate that a prior order, decree or injunction prohibited the defendant (or _____ an entity controlled by the debtor) from engaging in the type of fraudulent conduct which formed the basis for his conviction, there has been no showing that the defendant acted with the aggravated criminal intent envisioned by the Sentencing Commis- __________ sion in section 2F1.1(b)(3)(B), as illustrated by the applicable guideline text and commentary. See United States v. Carrozzella, ___ _____________ ___________ 105 F.3d 796, 800 (2d Cir. 1997) (the defendant "violated a command not to file false accounts, but the command was a rule applicable to all [debtors] and not specifically directed to him.").12 The nearest likeness to a section 2F1.1(b)(3)(B)  ____________________ 12We express no view regarding whether a departure might be based upon conduct that does not come squarely within U.S.S.G.  2F1.1(b)(3)(B). 18 "order" contained in the Official Forms is the "Notice of Com- mencement of Case Under Chapter 11 of the Bankruptcy Code, Meeting of Creditors, and Fixing of Dates," Official Bankr. Form 9, 11 U.S.C., which is mailed by the bankruptcy court clerk's office to the debtor and all creditors. Virtually identical variations on Form 9 are entered routinely in most bankruptcy proceedings. Form 9 bears the preprinted name of the Bankruptcy Court Clerk, acting "for the court," see id., and directs the ___ ___ debtor to appear at the meeting of creditors to provide sworn testimony. Id. In the latter respect, Form 9 is no more akin to ___ a judicial order than is the administration of the oath itself. Official Form 9 resembles in considerable measure the official letter of warning discussed in United States v. ______________ Linville, 10 F.3d 630 (9th Cir. 1993), with respect to which the ________ Ninth Circuit explained: It is pellucid that there is a vast differ- ence between ignoring prior decrees, orders and injunctions after being subject to formal proceedings, and ignoring letters and the _______ ___ ___ like, no matter how official they might look. ____ To hold otherwise would compel enhancements __ ____ _________ _____ ______ ____________ in every criminal case where a defendant was __ _____ ________ ____ _____ _ _________ ___ told by someone in authority that what she ____ __ _______ __ _________ ____ ____ ___ was doing was illegal, rather than limiting ___ _____ ___ _______ ______ ____ ________ them to more relatively unusual cases where ____ __ ____ __________ _______ _____ _____ someone violated a specific court or agency _______ ________ _ ________ _____ __ ______ order or adjudication. _____ __ ____________ Id. at 632-33 (emphasis added). Similarly, the notice of meeting ___ of creditors mailed by the bankruptcy clerk is an advisory which rises neither to the level of a judicial nor an administrative order under any conventional meaning of the term. Thus, neither section 2F1.1(b)(3)(B) itself, nor the 19 relevant commentary, supports the enhancement rationale relied upon below, since their language plainly indicates that the enhancement was meant to apply to defendants who have demon- strated a heightened mens rea by violating a prior "judicial or __________ ____ ___ _____ administrative order, decree, injunction or process." See ___ U.S.S.G. 2F1.1(b)(3)(B), comment. (n.5), (backg'd). Were an enhancement to be predicated on the ground that Official Form 9 constitutes a "judicial order," it would become applicable in all bankruptcy fraud cases, simply by virtue of the forum in which the false statements were made and without regard to the aggra- vated criminal intent it was designed to redress. Any such automatic application in bankruptcy fraud cases, especially absent the required mens rea, would work an amendment of the ____ ___ guideline, see id. 2F1.1(b)(3)(B) (prescribing minimum offense ___ ___ level of ten after enhancement); see id. 2F1.1(a) (setting BOL ___ ___ at six). As we can discern no hint that the Commission meant to distinguish bankruptcy fraud from other frauds in this regard, see U.S.S.G. 2F1.1, comment. (backg'd) (explaining that fraud ___ guideline "is designed to apply to a wide variety of fraud cases"), we conclude that the two-level enhancement imposed on Shadduck for violating a judicial order (U.S.S.G.  2F1.1(b)(3)(B)) was erroneous and cannot stand. (ii) Judicial Process (ii) Judicial Process ________________ The government contends, in the alternative, that Shadduck violated a "judicial . . . process," see U.S.S.G.  ___ 2F1.1(b)(3)(B), by committing a bankruptcy fraud which abused the 20 bankruptcy process itself. See United States v. Messner, ___ ___ ______________ _______ F.3d ___, 1997 WL 67847, *8 (10th Cir. 1997) (holding that bankruptcy fraud constitutes violation of "judicial process"); United States v. Welch, 103 F.3d 906, 908 (9th Cir. 1996) (per ______________ _____ curiam) (same); United States v. Michalek, 54 F.3d 325, 330-33 _____________ ________ (7th Cir. 1995) (same); United States v. Lloyd, 947 F.2d 339, 340 _____________ _____ (8th Cir. 1991) (same). We decline to address the claim for several reasons. First, the district court explicitly declined to reach the question after holding that Shadduck had violated a judicial order. Shadduck, 889 F. Supp. at 10. Second, no exceptional ________ circumstance warrants our consideration of the claim before the district court (as it is free to do) has occasion to consider it on remand. See United States v. Morales-Diaz, 925 F.2d 535, 540 ___ _____________ ____________ (1st Cir. 1991). Third, the issue is not free from doubt. See ___ Carrozzella, 105 F.3d at 799-802 (questioning rationale employed ___________ in cases which hold that "abuse" of bankruptcy proceeding itself constitutes "violation" of judicial "process"); see also United ___ ____ ______ States v. Krynicki, 689 F.2d 289, 292 (1st Cir. 1982) (before ______ ________ addressing issue first raised on appeal, appellate court should consider whether correct resolution is clear). d. Multiple-Victims Enhancement (U.S.S.G.  d. Multiple-Victims Enhancement (U.S.S.G.  _______________________________________________________ 2F1.1(b)(2)(B)) 2F1.1(b)(2)(B)) _______________ The district court imposed a two-level enhancement pursuant to U.S.S.G. 2F1.1(b)(2)(B), based on its finding that Shadduck had engaged in a scheme to defraud more than one victim. 21 Shadduck, 889 F. Supp. at 11. Shadduck complained below that his ________ crime was victimless, in that the monies he concealed were exempt and, therefore, that neither the trustee nor the creditors can be considered victims. On appeal, however, Shadduck presses only two arguments: (i) the trustee alone qualifies as a victim, and (ii) the multiple-victims enhancement, in tandem with the en- hancement under U.S.S.G. 2F1.1(b)(3)(B), see supra pps. 14-19, ___ _____ amounted to impermissible "double counting." As neither argument was raised below, we review only for "plain error." See United ___ ______ States v. Lilly, 13 F.3d 15, 17-18 (1st Cir. 1994).  ______ _____ There is no merit in the contention that the trustee alone was victimized by the concealment. As used in subsection 2F1.1(b)(2)(B), the phrase "'[s]cheme to defraud more than one victim,' . . . refers to a design or plan to obtain something of value from more than one person. In this context, 'victim' refers to the person or entity from which the funds are to come directly." U.S.S.G. 2F1.1, comment. (n.3). Thus, the relevant commentary makes clear that the primary victims of a bankruptcy fraud, for the most part, are the individual creditors. Nevertheless, as the representative of the debtor estate, see Bankruptcy Code 323(a), 11 U.S.C. 323 (a), it is ___ incumbent upon the trustee to collect and reduce to money all nonexempt assets of the estate, id. 704 (1). Accordingly, ___ although the trustee has no prepetition claim to property of the debtor and therefore does not qualify as a "creditor," a pre- scribed portion of the net recoveries from any "property of the 22 estate" administered by the trustee comprises a priority cost of administration as provided in Bankruptcy Code 326(a), 330(a)(1), 503(b)(1)(A) & 507(a)(1). Consequently, not only creditors but the chapter 7 trustee as well may be victimized directly by a bankruptcy fraud to the extent it deprives the estate of assets otherwise subject to administration. Moreover, it is likewise clear that Shadduck schemed to obtain something of value. By concealing pension plan funds and insurance policies which were neither claimed nor set apart as exempt, Shadduck attempted to retain property of the estate otherwise subject to administration for the benefit of credi- tors.13 See Taylor, 503 U.S. at 643-44; Mercer, 53 F.3d at 3 ___ ______ ______ (property claimed exempt is initially "property of the estate" and becomes exempt only if there is no timely objection to exemption claim).  The second challenge Shadduck makes to the multiple- victims enhancement that it amounts to impermissible "double  ____________________ 13As the Ninth Circuit has noted:  Clearly the false statement [the debtor] made in relation to his bankruptcy estate was intended to result in an undervaluation of the estate in bankruptcy and the availability of less money to satisfy the demands of the creditors. Thus, [the debtor] would have "obtained something of value from more than one person," that being whatever portion of the estate to which the creditors were enti- tled but which was hidden by the false state- ment. United States v. Nazifpour, 944 F.2d 472, 474 (9th Cir. 1991) _____________ _________ (per curiam). See also Michalek, 54 F.3d 325, 330 (7th Cir. ___ ____ ________ 1995) (concealing assets harms trustee and creditors). 23 counting" when imposed with the enhancement for violating a judicial order need not be discussed at this time given our decision to set aside the latter ruling. See supra pps. 14-19. ___ _____ Consequently, we affirm the two-level enhancement imposed pursu- ant to U.S.S.G. 2F1.1(b)(2)(B). 24 III III CONCLUSION CONCLUSION __________ For the foregoing reasons, appellants' convictions are affirmed. Andrea Shadduck's sentence is affirmed. Michael Shadduck's sentence is affirmed in part and vacated in part, and the case is remanded to the district court for resentencing. So Ordered. So Ordered. __________ 25